Willie **WIMES** and Gertrude Wimes, Plaintiffs,

v.

**EATON CORPORATION, a foreign corporation, and Employers Insurance of Wausau, a domestic corporation, Defendants.**

No. 82–C–0365.

United States District Court, E.D. Wisconsin.

Oct. 4, 1983.

**332**

H. Stanley Riffle, Wiernick & Karp, Milwaukee, Wis., for plaintiffs.

Michael J. Gonring, Quarles & Brady, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

WARREN, District Judge.

The companion motions pending before the Court in this action present issues under Rule 34(c) of the Federal Rules of Civil Procedure that remain largely unresolved by the few courts that have had occasion to consider the import of that rule. Because of the unique jurisdictional posture of the parties, this Court likewise does not reach the Rule 34 questions presented by discovery disputes such as this and instead remands the action to the state court from which it was removed.

## BACKGROUND

On February 15, 1982, plaintiff filed his complaint in state court, seeking damages totaling $500,000 for pain and suffering, medical expenses, and loss of income, resulting from an accident that occurred during the course of his employment, causing severe personal injuries.[1] Specifically, plaintiff claims that, on or about June 5, 1979, while he was attempting to lift a 2000-pound "rollover machine" with a crane and hook manufactured and sold to his employer, Lawran Foundry ("Lawran"), by the defendant, Eaton Corporation ("Eaton"), the hook straightened and was thrown violently into plaintiff's face, causing him multiple nasal and facial lacerations, traumatic mydriasis, and iridocyclitis. Plaintiff's principal allegation is that these injuries were proximately caused by Eaton's negligence in the manufacture, inspection, and marketing of a defective hook that was at the time it left Eaton's control unreasonably dangerous to the ultimate consumer or user.

1. Although the action was originally brought by plaintiff and his wife, Gertrude Wimes, the parties stipulated on June 10, 1983, to an amendment to the complaint striking any and all references to her. The Court's order in this matter was issued on June 28, 1983.

On March 25, 1983, the action was removed to this Court on the basis of its diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332 and 1441. As Eaton maintained in its petition for removal, diversity between the Wisconsin plaintiff and the Ohio defendant was not lacking as a result of the posture of Employers Insurance of Wausau, a Wisconsin corporation, as a party defendant. While federal courts normally lack jurisdiction over a suit against several defendants, one of whom is a citizen of the same state as plaintiff, *American Fire & Casualty Company v. Finn*, 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951), where, as here, the ultimate interests of one of those defendants are actually aligned with those of the plaintiff, diversity jurisdiction is not destroyed. *See Hamer v. New York Railways Company*, 244 U.S. 266, 274–275, 37 S.Ct. 511, 514–15, 61 L.Ed. 1125 (1917); *Standard Oil Company of California v. Perkins*, 347 F.2d 379, 382 (9th Cir.1965).

In this respect, Eaton stated that the interests of Employers Insurance of Wausau are aligned

> directly with plaintiffs [1] in that it is the worker's compensation insurance carrier of Lawran Foundry, the employer of [plaintiff] Willie Wimes. Wimes' sole remedy against his employer and Employers Insurance of Wausau is in worker's compensation under § 102.03(2) of the Wisconsin Statutes, and Employers Insurance of Wausau may maintain an action for reimbursement from Eaton under § 102.29. Therefore, Employers Insurance of Wausau should be realigned and/or considered as a party plaintiff for purposes of removal. (footnote added by the Court.)

The action, thus properly before the Court pursuant to its federal diversity jurisdiction, is now in the discovery stage. It is in this setting that the present dispute involving plaintiff and non-party Lawran has developed.

Plaintiff has enlisted the expert assistance and advice of a metallurgical engineer, Dr. Carl R. Loper, Jr., who has examined the allegedly defective hook along with plaintiff's written account of the accident and the answers to plaintiff's first set of interrogatories. According to plaintiff, Dr. Loper is unable to formulate an opinion with respect to the mechanics of the accident without physical inspection of the "rollover machine" that caused plaintiff's injuries.

In an effort to secure access to the Lawran Foundry in which the machine is located, plaintiff's counsel apparently made numerous phone calls to the general manager of the foundry but was not successful in speaking with him. Finally, on August 12, 1983, plaintiff was advised by the manager's secretary that he would not be permitted to enter the premises to inspect the machine under any circumstances.

Frustrated in his attempts to enter upon Lawran's property, plaintiff now moves the Court for an order granting him leave to amend his complaint to name Lawran as a party defendant. As stated in plaintiff's accompanying brief and an affidavit submitted by his attorney, the purpose of this Rule 15 motion is to enable the Court to exercise jurisdiction over Lawran in order that plaintiff's second motion pursuant to Rule 34(c) might be granted. With that motion, plaintiff seeks an order granting leave to enter the Lawran Foundry to examine, inspect, and, if necessary, test the "rollover machine."

## RULE 34(c) AND PLAINTIFF'S MOTION TO AMEND

As suggested at the outset, plaintiff's companion motions to amend and for an order for entry upon land fall into what has been termed "a curious gap" in the discovery system established by the Federal Rules of Civil Procedure. Note, *Rule 34(c) and Discovery of Nonparty Land*, 85 Yale L.J. 112, 112 (1975). That gap is a deliberate creation of the drafters of Rule 34 who, in providing a means for securing production of documents and things and entry upon land for inspection, limited the applicability of the rule to parties only. *Hickman v. Taylor*, 329 U.S. 495, 504–05, 67 S.Ct. 385, 390, 91 L.Ed. 451 (1947); *Conti-*

*nental Coatings Corporation v. Metco, Inc.*, 50 F.R.D. 382, 384 (N.D.Ill.1970).

This restriction on the scope of Rule 34 need not pose an insuperable barrier to litigants, since there are other mechanisms for discovery of documents and things in the possession of nonparties. *See, e.g.,* Fed.R.Civ.P. 45(d)(1) (subpoena for taking deposition may also command production of tangible things); Fed.R.Civ.P. 30(f)(1) (documents produced for inspection during examination of witness to be annexed to deposition). Yet, the rules plainly do not reach a situation in which a litigant seeks to enter on land not in the possession or control of a party or otherwise desires to inspect things that are physically impossible to produce at the taking of a deposition. *See Huynh v. Werke,* 90 F.R.D. 447, 450 (S.D.Ohio 1981); *Humphries v. Pennsylvania Railroad Company,* 14 F.R.D. 177, 181 (N.D.Ohio 1953); 4A J. Moore, *Moore's Federal Practice* ¶ 34.22 at 34–79 (2d ed. 1983); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2209 at 618–619 (1970).

Plaintiff, faced with just such a discovery roadblock, has invoked subsection (c) of Rule 34 in support of his motion for an order to compel entry and inspection. That subsection provides simply:

**(c) Persons Not Parties.** This rule does not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land.

In the notes to this 1970 amendment to the rule, the Advisory Committee described its purpose as follows:

**Subdivision (c).** Rule 34 as revised continues to apply only to parties. Comments from the bar make clear that in the preparation of cases for trial it is occasionally necessary to enter land or

inspect large tangible things in the possession of a person not a party, and that some courts have dismissed independent actions in the nature of bills in equity for such discovery on the ground that Rule 34 is preemptive. While an ideal solution to this problem is to provide for discovery against persons not parties in Rule 34, both the jurisdictional and procedural problems are very complex. For the present, this subdivision makes clear that Rule 34 does not preclude independent actions for discovery against persons not parties.

In other words, while Rule 34(c) does not explicitly authorize independent discovery actions against nonparties, neither does it prohibit them. *Home Insurance Company v. First National Bank of Rome,* 89 F.R.D. 485, 487 (N.D.Ga.1980); Note, *Rule 34(c) and Discovery of Nonparty Land,* 85 Yale L.J. 112, 114 (1975). The availability of the type of discovery plaintiff seeks thus depends on his ability to maintain an independent action against Lawran outside the scope of Rule 34.

To meet this burden, plaintiff seeks to amend his complaint to name Lawran as an additional party defendant—a request the Court grants but not without some concern that counsel on both sides of this action did not fully appreciate the consequences of plaintiff's motion at the time it was filed and served.[2] Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its complaint after a responsive pleading is served only by leave to court or by written consent of the other party. *See In re Cessna Distributorship Antitrust Litigation,* 532 F.2d 64, 67–68 (8th Cir.1976); *Fern v. United States,* 213 F.2d 674, 677 (9th Cir.1954). Subdivision (a) also encourages the Court to look favorably on requests to amend, stating that

**2.** Indeed, during the pretrial conference of September 16, 1983, plaintiff's counsel advised the Court informally that his client's motions, based on an innovative, tandem application of Rules 15 and 34, call for a kind of judicial action with which he was not familiar. Likewise, counsel for Eaton stated that while he would not be opposing plaintiff's motion to amend, it was his

view that the Court might be able to issue an order compelling discovery absent Lawran's joinder as a party defendant. Given the precedential void into which plaintiff's motions fall, counsel's uncertainty as to the procedural and substantive merits of plaintiff's requests are not surprising.

"leave shall be freely given when justice so requires." *See Thompson v. New York Life Insurance Company*, 644 F.2d 439, 444 (5th Cir.1981); *Polin v. Dun & Bradstreet, Inc.*, 511 F.2d 875, 877 (10th Cir. 1975).

Precise delineation of when amendments should be allowed is difficult since the granting or denial of leave to amend is a matter within the discretion of the trial court, *Zenith Radio Corporation v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), and is subject to reversal on appeal only for an abuse of that discretion. *Esquire Restaurant, Inc. v. Commonwealth Insurance Company of New York*, 393 F.2d 111, 116 (7th Cir.1968). At the same time, it is generally held that, if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he or she ought to be afforded an opportunity to test that claim on the merits. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment—leave should be freely given. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484–485 (6th Cir.1973); *Barbarino v. Anchor Motor Freight, Inc.*, 421 F.Supp. 1003, 1005–1006 (W.D.N.Y.1976).

Since the procedural history of this case suggests no reason to deny plaintiff's motion and the underlying purpose of his proposed amendment holds some merit—although that is a matter which, for the reasons stated below, the Court does not now reach—plaintiff will be granted leave to join Lawran as an additional party defendant.

As the Court indicated above, however, this order is not without at least one important consequence—namely, that in granting plaintiff leave to amend, the Court also robs itself of the power to grant the very order that plaintiff ultimately seeks. More to the point, joinder of another Wisconsin defendant whose interests are clearly adverse to those of the Wisconsin plaintiff destroys the diversity jurisdiction invoked by Eaton pursuant to 28 U.S.C. § 1332, *see Krupnick v. Union National Bank*, 470 F.Supp. 1037, 1038 (W.D.Pa. 1979); *Owen Equipment & Erection Company v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978), and necessitates that this action be remanded to the state court from which it was removed. *See Adams v. Beland Realty Corporation*, 187 F.Supp. 680, 682–683 (E.D.N.Y.1960); *Heatherton v. Playboy, Inc.*, 60 F.R.D. 372, 377–378 (C.D.Cal.1973). As a result, the Court must deny on jurisdictional grounds plaintiff's Rule 34(c) motion for leave to enter the Lawran Foundry to inspect the "rollover machine."

### RULE 34(c) REVISITED

Because remand may well have been unanticipated by all parties to this action, the Court feels obliged to explain the various issues with which it wrestled in resolving this matter. Necessarily, those issues turn on the practical import of Rule 34(c) and the power of the Court to issue an order compelling discovery under that provision.

Having surveyed what little authority exists in this area, the Court concludes that what plaintiff actually seeks by its Rule 34(c) motion is an antiquated instrument called an equitable bill of discovery. The bill has been described this way:

... Before discovery practice was codified, the bill was the primary means for obtaining discovery both at law and in equity: it was used to extend the limited discovery available in federal practice until 1938, when the discovery provisions of the Federal Rules of Civil Procedure rendered it largely obsolete.

In its historical form the bill is not capable of filling the gap to which Rule 34(c) is addressed. Although the bill traditionally afforded inspection of land, it ran only against parties. There were

certain limited exceptions to this rule: the bill would lie against real parties in interest and parties' representatives and agents, and against any person not a party to compel disclosure of the identity of the proper defendant. As a general matter, however, the bill could not provide discovery of nonparty land.

Although the equity bill in its historical form fails to provide the needed discovery, it has been broadened in scope from time to time by judicial action and might be expanded to provide discovery from a nonparty. But an equity bill running against nonparties poses a serious jurisdictional problem. The traditional bill for discovery was considered ancillary to the main action: hence it did not have to satisfy separate federal jurisdictional or venue provisions. Presumably ancillary jurisdiction would also exist for a discovery bill running against a nonparty. However, the problem of personal jurisdiction is not so easily solved. When an ancillary action is brought against a nonparty, personal service must be effected. For this reason, the bill would often fail when the landowner resides outside the state where the main action is brought.

In addition to its failure to run against nonparties, a number of other traditional limitations on the use of the bill would have to be overcome. Equitable discovery was generally limited to information relevant to a party's own claims and defenses. Furthermore, it was available only to the plaintiff, so that a defendant seeking discovery had to file a cross complaint in order to obtain discovery. Finally, the granting of the bill was discretionary. Although none of these problems is insurmountable, the process of adapting the archaic equity bill to provide a modern discovery tool for nonparty land would entail considerable litigation, with attendant cost, uncertainty, and inconsistency.

Note, *Rule 34(c) and Discovery of Nonparty Land*, 85 Yale L.J. 112, 114–118 (1975).

The principal theoretical objection to an order granting plaintiff an equitable bill of discovery under Rule 34(c) is that such judicial action would be in apparent conflict with the letter and spirit of the discovery provisions of the Federal Rules. The purpose of those provisions was to replace the cumbersome and sometimes inconsistent practices that had grown up through the processes of historical accretion with an integrated and efficient system for pretrial investigation. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2002 at 21 (1970). Among other things, simpler procedures were substituted for the unwieldy bill in equity of the former practice. *See* 4 J. Moore, *Moore's Federal Practice* § 26.03[2] at 26–82 (2d ed. 1983). To revive that instrument today in the wake of some 50 years of practice under a regime of prescribed rules and statutory provisions might thus appear anomalous.

On the other hand, the notion that the Federal Rules preclude entirely a resort to the equity powers of the judiciary has not gone uncriticized. *See generally* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1045 at 152–157 (1969) (outlining remaining distinctions between actions at law and in equity). Indeed, some courts have expressed a willingness to revive the equitable bill as an aid to discovery in situations just like the present, in which a party seeks inspection on a non-party's premises. *See, e.g., Arcell v. Ashland Chemical Company, Inc.,* 152 N.J.Super. 471, 505–508, 378 A.2d 53, 70–71 (1977); *cf., Home Insurance Company v. First National Bank of Rome,* 89 F.R.D. 485, 486–488 (N.D.Ga.1980) (discussing the propriety of the equitable bill of discovery under Rule 34(c) but ultimately deciding that the facts of the case do not support invocation of the rule); *but cf., United States v. 25.02 Acres of Land,* 495 F.2d 1398, 1402–1403 (10th Cir.1974) (upholding district court's discretion to quash subpoena duces tecum from appraisals made for nonparties; passing reference to Rule 34(c)).

This Court, too, is of the view that absent some amendment to the rules to allow "on premises" inspection of things in the

possession of nonparties, the equitable bill of discovery is the best method of achieving that end. In fact, were it not for the jurisdictional peculiarity of this case, the Court might well grant plaintiff such a bill upon a complaint properly filed and served. As it is, however, the Court is reluctant to proceed down that heretofore untraveled path when its jurisdiction over the two non-diverse parties in interest is so clearly lacking under 28 U.S.C. § 1332.

Of course, as reported in the descriptive passage quoted above, the traditional bill for discovery was considered ancillary to the main action and did not have to satisfy separate jurisdictional requirements. *See Loft, Inc. v. Corn Products Refining Company,* 103 F.2d 1, 9–10 (7th Cir.), *cert. denied,* 308 U.S. 558, 60 S.Ct. 80, 84 L.Ed. 469 (1939); *Bausch Machine Tool Company v. Aluminum Company of America,* 63 F.2d 778, 779–780 (2d Cir.), *cert. denied,* 289 U.S. 739, 53 S.Ct. 658, 77 L.Ed. 1486 (1933). Yet that passage also makes plain that the bill carries with it a lot of substantive and procedural baggage that may or may not be applicable under the modern federal rules. Given this uncertainty, the Court does not regard the present case as the proper setting for both reviving the old equitable bill in the context of nonparty discovery and for carving out yet another exception to the complete diversity requirement of *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

Nonetheless, plaintiff is not without hope of securing the court-ordered inspection he claims he needs if he is to prosecute this case further. Significantly, the Wisconsin Rules of Civil Procedure mirror the Federal Rules in not precluding "an independent action against a person not a party for production of documents and things and permission to enter upon land." Wis.Stat. Ann. § 804.09(3) (West 1977). The precise nature of that independent action is a matter left to the determination of the state court. In any event, plaintiff will not confront in that forum the jurisdictional problem that prevents this federal tribunal from acting on his motion.[3] Accordingly, the Court opines that remand provides plaintiff with the best opportunity for securing entrance upon the Lawran Foundry premises and inspection of the "rollover machine."

## CONCLUSION

For the reasons stated above, the Court GRANTS plaintiff's motion to amend, DENIES plaintiff's motion for leave to enter upon land for purposes of inspection, and REMANDS the action to the state court from which it was removed.

---

**3.** As a preliminary matter, the state court may decide that an "independent action" pursuant to Wis.Stat. § 804.09(3) (West 1977) means just that—an action independent of the central litigation between plaintiff and defendants Eaton and Wausau. In fact, if this Court were able to exercise jurisdiction over plaintiff and the non-diverse Lawran, it might well deny plaintiff's motion to amend and instead require that he bring a separate suit for an equitable bill. *See generally American Fire & Casualty Company v. Finn,* 341 U.S. 6, 13–14, 71 S.Ct. 534, 539–40, 95 L.Ed. 702 (1951); *Marquette National Bank v. First National Bank, Of Omaha,* 422 F.Supp. 1346, 1353–1354 (D.Minn.1976) (defining "separate and independent" in context of § 1441(c)). Absent such jurisdictional problems, the state tribunal is free to place its own gloss on the phrase, "independent action," either permitting plaintiff to seek his discovery order against Lawran as one of three co-defendants or requiring that he bring a discrete claim against Lawran for entry and inspection.